UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SHEILA P.[1],

          **Plaintiff,**

   v.                                   Civil Action 3:22-cv-366
                                        Judge Thomas M. Rose
**COMMISSIONER OF SOCIAL**         Magistrate Judge Chelsey M. Vascura
**SECURITY,**

          **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Sheila P., ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB"). This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12); the Commissioner's Memorandum in Opposition (ECF No. 13); and the administrative record (ECF No. 7). For the reasons that follow, the undersigned **RECOMMENDS** that the Court **AFFIRM** the Commissioner of Social Security's non-disability determination and **OVERRULE** Plaintiff's Statement of Errors.

        **I.**        **BACKGROUND**

Plaintiff protectively filed her application for Title II disability insurance benefits on September 15, 2016, alleging that she became disabled on June 21, 2016. Plaintiff's application was denied at the initial and reconsideration levels. An administrative law judge ("ALJ") held a

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

video hearing on January 17, 2019. Plaintiff, represented by counsel, appeared and testified. The ALJ issued an unfavorable determination on March 7, 2019, and that determination became final on February 11, 2020, when the Appeals Council denied Plaintiff's request to review. Plaintiff sought judicial review of that final determination, and on June 25, 2021, this Court ordered that the case be remanded for further consideration. On remand, a telephone hearing was held on April 11, 2022, before a different ALJ. Plaintiff, again represented by counsel, appeared and testified, as did a vocational expert. Following that hearing, Plaintiff amended her application to a closed period of disability from June 23, 2016, to September 20, 2020. The ALJ issued an unfavorable determination on June 1, 2022, and that determination became final on October 17, 2022, when the Appeals Council declined review.

Plaintiff seeks judicial review of that final determination. In her Statement of Errors (ECF No. 12), Plaintiff sets forth a single contention of error: the ALJ's residual functional capacity determination is not supported by substantial evidence and is contradicted by the overwhelming majority of mental health opinion evidence in the record. (Pl.'s Statement of Errors 9, ECF No. 12.) Plaintiff's contention of error lacks merit.

## II. THE ALJ'S DECISION

The ALJ issued her decision on June 26, 2022. (R. 594–614.) The ALJ first determined that Plaintiff met the insured status requirements of the Social Security Act through September

2

30, 2023. (R. 597.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged June 23, 2016 onset date. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe, medically determinable impairments: bilateral knee degenerative joint disease (DJD); obstructive sleep apnea (OSA); hypertension (HTN); diabetes mellitus (DM); peripheral edema; obesity; anxiety disorder; depressive disorder; panic disorder with agoraphobia; dependent personality disorder; affective disorder; and bipolar disorder.[3] (*Id.*) At step three, the ALJ further found that Plaintiff did not have a severe impairment or combination of impairments that met or medically equaled a listed impairment. (*Id.* at 598–602.)

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] Plaintiff's challenge relates solely to her mental limits. Accordingly, the Court's discussion will be limited to the same.

3

When considering whether Plaintiff's mental impairments or combination of impairments met or medically equaled a listed impairment, the ALJ discussed each of the four "paragraph B" criteria[4] used to evaluate mental impairments: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (*Id.* at 600-601.) The ALJ found that Plaintiff had moderate limitations in all four of the paragraph B criteria. (*Id.* at 600–01.)

The ALJ then set forth Plaintiff's residual functional capacity[5] ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can. . . perform unskilled simple, routine, repetitive tasks; unable to perform at a production-rate pace (*e.g.* assembly line work) but can perform goal-oriented work (*e.g.* office cleaner); occasional superficial contact with coworkers and supervisors but no teamwork, tandem tasks, conflict resolution or over-the-shoulder supervision; "superficial contact" is defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or rendering advice; no contact with the general public as part of job duties; and can tolerate occasional changes in an otherwise routine work setting explained in advance to allow time for adjustment to new expectations.

(*Id*. at 602.) In arriving at this RFC, the ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause at least some of her alleged symptoms, her statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the record evidence. (*Id*. at 603.)

---

[4] The four aspects of mental functioning are referred to as the "paragraph B" criteria, as they appear in paragraph B of many Listings involving mental impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A(2)(b).
[5] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

At step four, the ALJ relied on testimony from a vocational expert and determined that Plaintiff was unable to perform her past relevant work as she had performed it. (*Id*. at 611–12.) At step five, the ALJ, again relying on the testimony from the vocational expert, determined that considering Plaintiff's age, education, work experience, and residual functional capacity, jobs existed in significant numbers in the national economy that Plaintiff could perform, with representative occupations being merchandise marker, mail sorter and routing clerk. (*Id.* at 612.) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from June 23, 216, through the date of the ALJ's determination. (*Id.* at 613.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite

5

conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

**A. The ALJ properly followed the regulatory framework when determining the weight afforded to the opinion of Plaintiff's treating psychologist, H. Owen Ward, Ph.D.**

The prior ALJ determination in this case was reversed and remanded on the basis that the ALJ had failed to follow the proper analysis before concluding that the opinion of Plaintiff's treating psychologist, H. Owen Ward, Ph.D., was not entitled to controlling weight. (R. 604, 682–96.) On remand, the new ALJ also determined that Dr. Ward's opinion was not entitled to controlling weight, finding it was not well-supported by the evidence in the record and was inconsistent with other substantial evidence in the record. (*Id.* at 605–06.) The ALJ concluded that Dr. Ward's opinions were only "minimally persuasive and afforded little weight." (*Id.* at 606.) In this appeal, the bulk of Plaintiff's argument is that the new ALJ also erred by not giving controlling weight to Dr. Ward's opinion. (Pl's Statement of Errors 10–14, ECF No. 12.)

Plaintiff began treatment with Dr. Ward in September of 2016 for major depression and generalized anxiety, and her mental status exam described her as "tense, depressed, anxious, and obese with a constricted affect." (Pl's Statement of Errors 3, ECF No. 12 (citing R. 406)). Dr. Ward noted that Plaintiff's "judgment was severe [sic] impaired." (*Id.*) Follow-up counseling notes by Dr. Ward identify "issues with panic attacks, anxiety, depression, agoraphobia, anger and irritability, and excessive worrying." (*Id.* (citing R. 402-403).) On October 21, 2016, Dr.

6

Ward noted that Plaintiff "was having sleep issues, was nervous, and was withdrawn to her home since she was put on Paxil." (*Id.* at 3–4 (citing R. 409)).

On November 9, 2016, Dr. Ward completed a "Return to Work Release" form for Plaintiff. (R. 404-06). On that form, Dr. Ward indicated Plaintiff was unable to work full time from September 9, 2016, to January 2, 2017, and that she should be transferred from the call center to processing and to working from home. Under those conditions, he estimated she could return to work on January 3, 2017. (*Id.* at 404–05.) Dr. Ward also wrote that Plaintiff had just begun psychiatric medication at the time of the opinion and would "need 2-3 months to achieve optimal progress." (*Id*. at 405). Additionally, Dr. Ward checked boxes indicating Plaintiff had several "moderately severe" functional limitations in: (1) her ability to maintain concentration for extended periods of time; (2) her ability to function in proximity to others without being distracted; (3) her ability to complete a task in a designated period of time without interruption; (4) her ability to maintain socially appropriate behavior; (5) her ability to perform complex tasks on a sustained basis; and (6) her ability to perform job functions. (*Id*. at 406). Dr. Ward also wrote that Plaintiff "may be able to return to business site 3-6 months after [return to work]." (*Id*. at 404.) Treatment notes from Dr. Ward from November 2016 through January 2017, document mild to moderate "Global Progress" by Plaintiff. (*Id.* at 464–68.) Plaintiff last saw Dr. Ward for treatment on January 24, 2017. (*Id.* at 463.)

An ALJ must consider all medical opinions in the record when evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations[6] define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments

---

[6] Because Plaintiff's application was filed prior to March 27, 2017, her claims are governed by the regulations governing benefits claims made prior to that date.

about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). An ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone." 20 C.F.R. § 416.927(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). Under the regulation in effect when Plaintiff filed her application, if the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 416.927(c)(2).

If an ALJ finds that the treating physician's opinion is not well-supported or is inconsistent with the other substantial evidence in the record and does not give the opinion controlling weight, then:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Further, an ALJ must "give good reasons in [the ALJ's] notice of determination or decision for the weight" the ALJ affords a treating source's opinion. 20 C.F.R. § 416.927(c)(2). The ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). As the Court in *Wilson* explained:

8

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

378 F.3d at 544–45. There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all six regulatory factors for weighing medical opinion evidence in a written decision). Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's RFC. 20 C.F.R. § 416.927(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 416.927(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

In considering whether an ALJ's RFC determination is supported by substantial evidence, the ALJ's decision must be read as a whole. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 15 851-52. In the ALJ's written opinion, she discussed Plaintiff's mental impairments at length as part of the step-three analysis, finding that Plaintiff had only moderate impairment in the four paragraph B criteria. (R. 600–01.) Thereafter, the ALJ provided a lengthy discussion of Plaintiff's mental impairments in the discussion of how she determined Plaintiff's RFC. The ALJ's written decision opinion provides sufficient explanation, based upon the record, for why the ALJ found Dr. Ward's opinions regarding the severity of Plaintiff's impairments entitled to little, not controlling, weight.

9

As required by the regulations, the ALJ first considered the supportability and consistency of Dr. Ward's opinions, concluding that Dr. Ward's opinion on the severity of Plaintiff's impairments lacked consistency and support. (*Id.* at 606.) The ALJ explained that Dr. Ward's conclusions on Plaintiff's mental health limits were internally inconsistent, were not consistent with other evidence in the record, and were offered only one day after Plaintiff had started a new medication. (*Id.*) The ALJ noted—and the record reflects—that Plaintiff's most severe anxiety symptoms were caused by driving a motor vehicle (*Id.* at 600, 402); she did not have difficulty interacting with supervisors or authority figures (*Id.* at 601, 475, 573); and she was able to attend to her personal hygiene and grooming, attend counseling sessions, procure rides to grocery shop, and shop early in the morning to avoid crowded stores (*Id.* at 601, 406, 570, 575). Moreover, Plaintiff's condition had improved since she first had first seen Dr. Ward and improved after he had completed the "Return to Work Release" form. (*Id.* at 607, 402–405, 466–68.) The ALJ explained:

> While the undersigned agrees that the evidence of record supports a finding that [Plaintiff] has severe mental impairments, it has been determined that [Plaintiff] has no more than moderate limitations in each of the paragraph B criteria areas as discussed above. Recall, the regulatory standard for evaluating mental impairments has changed, effective March 27, 2017, which is after this opinion evidence was provided. Additionally, Dr. Ward's opinion as to [Plaintiff]'s ability to work and the level of severity of [Plaintiff]'s cognitive limitations are somewhat inconsistent with one another. Although Dr. Ward opines that [Plaintiff] has primarily moderately severe limitations in her cognitive function, he further opined that [Plaintiff] would be able to work from home. This opinion evidence was not offered for the purpose of supporting a social security disability claim. Dr. Ward did not find that [Plaintiff]'s cognitive limitations would cause [Plaintiff] to have a significant degree of limitation lasting for twelve months or longer. In fact, the opinion evidence was offered only one day after [Plaintiff] had begun psychiatric medication and even still it was opined that [Plaintiff] would be expected to be able to return to full time work within a few months. Additionally, inconsistent with the social security regulations, Dr. Ward only addressed [Plaintiff]'s ability to perform her current job working in a call center, but he does not discuss her capacity to perform other work… Thus, after considering all the evidence of record, including the fourteen exhibits filed since the rendering of the previous Administrative Law

>Judge decision, the undersigned finds that the opinions of Dr. Ward are not afforded controlling weight and are only minimally persuasive and afforded little weight.

(*Id.* at 605–06.) The ALJ also found that Dr. Ward's opinions were inconsistent with the other evidence in the record:

>According to the reviewing psychologists . . . [Plaintiff] is capable of performing one to four step tasks in an environment that does not require fast pace, fast production, or high performance with brief and occasional interactions with others that does not require more than superficial contact, resolving conflicts, or persuading others to follow demands in a workplace with routine tasks and minimal changes (Exhibits 1A; 3A). Such limitation and the moderate paragraph B criteria area findings are not consistent with the significant degree of limitation endorsed by Dr. Ward. . . .

(*Id.* at 606.).

>Recall the discussion of the paragraph B criteria areas above. The evidence of record, including the evidence submitted since the prior decision, indicates that [Plaintiff]'s psychotherapy treatment is largely focused on [Plaintiff]'s familial stressors. [Plaintiff] is noted to struggle with coping with lack of relationship that she has with her children, her grandchildren and mother. She is noted to report difficulty grieving her father's death, especially considering the family fall out that occurred after. Nonetheless, [Plaintiff]'s treatment notes indicate that there has been some progress in reestablishing a relationship with her family. The evidence of record supports no more than moderate limitations in the paragraph B criteria. Despite [Plaintiff's] ongoing struggle with coping with familial relationships, it appears from the evidence of record that since starting medication and therapy, [Plaintiff]'s symptoms have diminished, which would also support a less restrictive mental functional capacity then what Dr. Ward opined.

(*Id.* at 607.)

Finding that Dr. Ward's opinion was not well-supported or consistent with other evidence in the record, the ALJ declined to give Dr. Ward's opinion controlling weight. The ALJ discussed a number of the *Wilson* factors and ALJ concluded that Dr. Ward's opinion was entitled to little weight. The ALJ considered the length, frequency and nature of Dr. Ward's treatment of Plaintiff, explaining that Plaintiff first saw Dr. Ward on September 9, 2016—the same day Dr. Ward completed Plaintiff's initial "release" from work and just two months before his November 9, 2016 "Return to Work Release." (*Id.* at 605.) The ALJ further noted that

11

Plaintiff had started taking psychiatric medications only one day before Dr. Ward authored his opinion on the severity of Plaintiff's impairments. (*Id.* at 605 (citing *id.* at 398–410).) In opining on what needed to occur before Plaintiff would be able to return to a full-time work setting, Dr. Ward wrote on November 9, 2016, that "[Plaintiff] has only just started psychiatric meds [management] yesterday. Will Need 2-3 months to achieve optimal progress." (*Id.* at 405.) As the ALJ noted, Dr. Ward did not treat Plaintiff after January 24, 2017. (*Id.* at 605 (citing *id.* at 463).)

The inconsistencies the ALJ found between Dr. Ward's opinion and the other evidence in the record was further support for her determination to afford it little weight. *See Moran v. Comm'r of Soc. Sec.*, No. 2:21-CV-214, 2021 WL 5917129, at *5 (S.D. Ohio Dec. 14, 2021), *report and recommendation adopted sub nom. Sue Ellen M. v. Comm'r of Soc. Sec.*, No. 2:21-CV-214, 2022 WL 426159 (S.D. Ohio Feb. 11, 2022) ("The lack of consistency [] that the ALJ outlined in her discussion of Dr. Still's opinion qualif[ies] as good reason[] to afford that opinion little weight.") Specifically, the ALJ found that the state agency psychologists' opinions, whose opinions she found were generally consistent with the record evidence (R. 606–607), were inconsistent with Dr. Ward's opinion on the severity of Plaintiff's impairments. (*Id.* at 606.) The ALJ also noted that Dr. Ward's opinion on the severity of Plaintiff's impairments was inconsistent with the medical source statement of physician assistant Scott Golde, PA, who opined that Plaintiff had only mild to moderate limitations in social interaction and moderate limitations in sustaining concentration and persistence and in adaptation. (*Id.* at 610–11.)

Despite finding Dr. Ward's opinion only minimally persuasive, the ALJ carefully considered Dr. Ward's assessment of Plaintiff and explained that the RFC determination accounts for symptoms and limitations identified by Dr. Ward. (*Id.*) She wrote:

12

> Nonetheless, the undersigned has taken into consideration the symptoms noted by Dr. Ward. According to Dr. Ward, [Plaintiff] has impairments in her mood and affect, immediate memory, her judgment is severely impaired as evidenced by impulsive shopping, and her insight is minimally impaired. [Plaintiff] is able to complete simple calculations slowly. She presents with obsessive anxiety/worry and phobia. The mental residual functional capacity endorsed herein adequately accounts for the limitations indicated by Dr. Ward. . . .
>
> Additionally, the undersigned has further determined that [Plaintiff] should have no contact with the general public to account for [Plaintiff]'s anxiety and panic disorder with agoraphobia and to afford her full benefit of the record. Additionally, limiting [Plaintiff] to no contact with the general public is supported by Dr. Ward's opinion that [Plaintiff] should not work in a call center setting.

(R. 606–608.)

Plaintiff cites to portions of the record that she maintains support Dr. Ward's opinions that Plaintiff's limitations were more severe than the moderate limitations found by the ALJ. (Pl.'s Statement of Errors 10–11, ECF No. 12). The existence of evidence in Plaintiff's favor, however, does not mean that the ALJ's decision to discount Dr. Ward's opinion was not supported by substantial evidence. "This is the classic situation in which the record evidence could support two different conclusions. In such scenarios, the law obligates the court to affirm the ALJ's decision, because the ALJ is permitted to decide which factual picture is most probably true." *Waddell v. Comm'r of Soc. Sec.*, No. 1:17–cv–01078, 2018 WL 2422035, at *10 (N.D. Ohio May 10, 2018), *report and recommendation adopted*, 2018 WL 2416232 (May 29, 2018); s*ee also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In sum, the ALJ declined to give Dr. Ward's opinion controlling weight and gave good reasons for doing so. Thus, the undersigned concludes that the ALJ did not err in considering and weighing Dr. Ward's opinion.

13

**B.      Other medical evidence does not establish that the ALJ erred in formulating Plaintiff's RFC.**

Plaintiff also contends that the ALJ erred in her assessment of opinions from her other providers, Scott Golde, PA-C, a physician assistant, and Arlie Ray, CT and Larry Alexander, PCC-C, which she positss support Dr. Ward's opinion on the severity of Plaintiff's mental impairments.

An ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(b). The applicable regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). Not every treating provider is an "acceptable medical source" under the applicable regulations, however, and instead may fall into the category of "other sources." *See* 20 C.F.R. § 404.1513(a); SSR 06–03p (rescinded as to claims filed after March 27, 2017); *see also Craig v. Comm'r of Soc. Sec.,* 116 F.3d 1480, 1997 WL 357818, at *2 (6th Cir. 1997) (unpublished table decision) (declining to consider chiropractor's opinion under the treating source rule because "chiropractors are considered 'other sources'"). Individuals not specifically mentioned in § 404.1502(a) are considered "other sources."

The regulations provide specific criteria for evaluating medical opinions from "acceptable medical sources," however, they do not explicitly address how to consider opinions and evidence from "other sources," including "non-medical sources" listed in 20 C.F.R. § 404.1513(d). SSR 06-3p clarifies that while opinions from other sources cannot establish the existence of a medically determinable impairment, they "are important and should be evaluated on key issues such as impairment severity and functional effects." 2006 WL 2329939, at *3

14

(Aug. 9, 2006); *see also, Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (quoting SSR 06-03p at *3) (information from "other sources" "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."). Thus,

> [a]lthough there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions for these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Cruse*, 502 F.3d at 541 (quoting SSR 06-03p at *6). The Ruling also instructs ALJs to evaluate opinion evidence from "other sources" using the same factors applicable to "acceptable medical sources"; namely:

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;
- The degree to which the source presents relevant evidence to support an opinion;
- How well the source explains the opinion;
- Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
- Any other factors that tend to support or refute the opinion.

SSR 06-03p at 4–5 (citing factors set forth in 20 CFR § 404.1527(c)). "[N]ot every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source . . . depends on the particular facts in each case." 20 C.F.R. § 404.1527(f)(1).

Although the ALJ must consider opinions from "other sources" and "generally should explain the weight given," "other-source opinions are not entitled to any special deference." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) (citation omitted); *see also Cole v.*

15

*Astrue*, 661 F.3d 931, 938 n.4 (6th Cir. 2011) (noting "the importance of addressing the opinion of a mental health counselor as a valid 'other source' providing ongoing care"); 20 C.F.R. § 404.1527(f)(2) (providing that the ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning....").

### 1. Scott Golde, PA-C

A physician's assistant, like Mr. Golde, is not an "acceptable medical source" and instead falls into the category of "other sources." *See* 20 C.F.R. § 404.1513(a); SSR 06–03p (rescinded as to claims filed after March 27, 2017); *Evans v. Comm'r of Soc. Sec.*, No. 1:10-CV-779, 2011 WL 6960619, at *12 (S.D. Ohio Dec. 5, 2011), *report and recommendation adopted,* No. 1:10CV779, 2012 WL 27476 (S.D. Ohio Jan. 5, 2012)(finding that a physician's assistance is a "medical source" included under the category of "other sources").

Here, the ALJ offered the following discussion of Mr. Golde's opinion:

> Although Mr. Golde was a treating source for [Plaintiff]… he is not an acceptable medical source [and] he did not treat [Plaintiff] prior to November 2017… Mr. Golde also opined that the claimant had mild to moderate limitations in social interaction, and moderate limitations in sustaining concentration and persistence, as well as in adaptation (Exhibit 5F at 4-6). The undersigned finds that this opinion evidence is afforded no weight as it is outside the area of specialty for Mr. Golde, and, as his notation acknowledged, are more appropriately addressed by claimant's therapist. Nonetheless, such limitation would not equate to disabling impairments as opined by Dr. Ward and is generally consistent with the opinions of the reviewing psychologists for the Department of Disability Determination.

(R. 610–11.) The ALJ did not err when assessing Mr. Golde's opinion. As this discussion demonstrates, the ALJ declined to give Mr. Golde's opinion any weight because the opinion was outside his area of expertise, he did not treat Plaintiff prior to November 2017, and Mr. Golde expressly wrote on his form on the need to address questions to Plaintiff's therapist. (*Id.* at 611; *see also id.* at 470 ("needs to be addressed with psych."); *id.* at 474 ( "need to have therapist fill

out issues relating to psycho-social factors")) The undersigned finds no error in the ALJ's consideration of the Mr. Golde's opinion.

    2.    **Arlie Ray, C.T. and Larry Alexander, PCC-C**

In August 2018, Mr. Ray and Mr. Alexander completed a check-box form "Medical Assessment of Ability to Do Work-Related Activities (Mental)." (*Id.* at 475–77.) Mr. Ray and Mr. Alexander endorsed limitations in the following domains: Social Interaction, Sustained Concentration and Persistence, and Adaptation. (*Id.*)

Under "Social Interaction," they endorsed no limitations in Plaintiff's abilities to accept instruction from or respond appropriately to criticism from supervisors or superiors and to respond appropriately to co-workers or peers. (*Id.* at 475.) They endorsed mild limitations in Plaintiff's abilities to work in coordination with or in proximity to others without distracting them or exhibiting behavioral extremes and to relate to the general public and maintain socially appropriate behavior. (*Id.*) Additionally, they indicated that these answers would change if only minimal contact or interaction with other was required. (*Id.*) When asked to explain, they wrote: "[Plaintiff]'s ability to go outside or drive is affected by exposure to cars and people." (*Id.*) Mr. Ray and Mr. Alexander did not provide any other explanations or support for their opined limitations.

In the "Sustained Concentration and Persistence" domain, Mr. Ray and Mr. Alexander endorsed marked limitations in Plaintiff's abilities to perform and complete work tasks in a normal work day or work week at a consistent pace, to work in cooperation with or in proximity to others without being distracted by them, to carry through instruction and complete tasks independently, and to perform at production levels expected by most employers. (*Id.* at 476.) They also endorsed no limitations in Plaintiff's abilities to process subjective information accurately and to use appropriate judgment and to maintain attention and concentration for more

17

than brief periods of time. (*Id.*) Mr. Ray and Mr. Alexander did not explain or otherwise expound upon these limitations.

Finally in the domain of "Adaptation," Mr. Ray and Mr. Alexander endorsed no limitations as to Plaintiff's abilities to remember locations, workday procedures and instructions, to be aware of normal hazards and take necessary precautions, and to maintain personal appearance and hygiene. (*Id.*) They endorsed marked limitations in Plaintiff's abilities to respond appropriately to changes in work setting and to behave predictably, reliably, and in an emotionally stable manner. (*Id.*) Finally, they endorsed an extreme limitation in Plaintiff's ability to tolerate customary work pressures. (*Id.* at 477.) When asked whether Plaintiff's condition was likely to deteriorate if she was placed under stress, particularly the stress of an 8 hour per day, 5 day per week job, they checked "YES" and explained: "[Plaintiff] has panic attacks at inappropriate times during the week. She suffers from generalized anxiety disorder." (*Id.*) No other explanations for the endorsed limitations were provided.

Licensed professional clinical counselors, like Mr. Alexander, and counselor trainees, like Mr. Ray, are not "acceptable medical sources" and thus fall into the category of "other sources" whose opinions are neither medical opinions, nor entitled to deference. 20 C.F.R. § 404.1527(a)(1); *Rogers*, 486 F.3d at 242. The form Mr. Ray and Mr. Alexander's opinion is a check-box form and "weak evidence at best." *See Hernandez v. Comm'r. of Soc. Sec.*, 644 F. App'x 468, 475 (6th Cir. 2016) (citation omitted). Courts in the district routinely find that in the absence of explanatory support or reference to objective findings, such conclusory forms lack supportability. *See, e.g.*, *Zachariah G. v. Comm'r of Soc. Sec.*, No. 2:21-cv-1600, 2022 WL 883769, at *9 (S.D. Ohio March 25, 2022), *report and recommendation adopted*, 2022 WL 2339444 (S.D. Ohio June 29, 2022) ("[B]ecause the statement was in the form of a checklist,

18

without any additional comments or annotation, it lacked any supporting explanations or citations to relevant medical evidence, which are central to the supportability factor."); *Laney v. Comm'r of Soc. Sec.*, No. 5:21-cv-01290, 2022 WL 2176539, at *6 (N.D. Ohio June 16, 2022) ("Courts throughout the Sixth Circuit have concluded that check-box opinions are unsupported and a reason to discount a medical opinion.") (citing cases). Indeed, they are so lacking, they can be discounted even where an ALJ has not expressly indicated that they are unpersuasive because they are check-boxes. *Laney*, 2022 WL 2176539, at *6 n. 2 (citing *Marks v. Comm'r of Soc. Sec.*, No. 1:16-cv-02848, 2018 WL 1801609, at *8 (N.D. Ohio Jan. 12, 2018)).

The ALJ only gave "some weight" to Mr. Ray's and Mr. Alexander's opinion, explaining: as follows:

> Only some weight was given to this opinion evidence, because it did not provide support for the alleged "marked" limitations in [Plaintiff]'s ability to concentrate and persist, nor was any support given for the alleged "marked" limitations in her ability to adapt to changes in a work setting, and maintain emotional stability, nor for the "extreme" limitation in tolerating work pressure. These opinions were not consistent with [Plaintiff]'s longitudinal counseling records, which are indicative of no more than moderate limitations in interacting with others, moderate limitations in concentrating, persisting, or maintaining pace, and a moderate limitation in adapting or managing herself. Thus, the undersigned finds the opinions of Mr. Alexander and Mr. Ray to be only somewhat persuasive and afforded only some weight.

(R. 611.) The ALJ specifically noted that the counselors provided no support for the three listed domains and that their opinions were inconsistent with Plaintiff's longitudinal counseling records. (*Id.*) Because these "opinions" are weak evidence at best, and the ALJ did not err by finding that they lacked support. Accordingly, the undersigned finds that the ALJ's conclusions are supported by substantial evidence and that the applicable legal framework did not require her to do more.

In sum, the ALJ's RFC determination that Plaintiff suffered from moderate mental health limitations, was based upon an appropriate consideration of the entire record. The limitations on

19

the types of work that Plaintiff can perform, and the limitations on the types of contact that Plaintiff may have with co-workers, supervisors, and the general public set forth in the RFC sufficiently take Plaintiffs' mental limitations into account.

## V.     RECOMMENDED DISPOSITION

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's non-disability determination and **OVERRULE** Plaintiff's Statement of Specific Errors. (ECF No. 12.)

## VI.     PROCEDURE ON OBJECTIONS

If any party objects to this R&R, that party may, within fourteen (14) days of the date of this R&R, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a *de novo* determination of those portions of the R&R or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the R&R.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE

20